**SINCLAIR OIL CORPORATION, a Wyoming corporation, Plaintiff,**

v.

**COLUMBIA CASUALTY COMPANY, an Illinois corporation, Defendant.**

No. 83–177.

Supreme Court of Wyoming.

May 18, 1984.

John E. Stanfield of Smith, Stanfield & Scott, Laramie, and Jack B. Speight of Hathaway, Speight & Kunz, Cheyenne, for plaintiff.

Paul B. Godfrey of Godfrey & Sundahl, and George E. Powers, Jr., Cheyenne, and Thomas B. Kelley of Cooper & Kelley, P.C., Denver, Colo., for defendant.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

The United States District Court for the District of Wyoming, pursuant to the Federal Court State Law Certificate Procedure Act, §§ 1-13-104 through 1-13-107, W.S. 1977, and Rules 11.01 through 11.07, Wyoming Rules of Appellate Procedure, certified to this court the following questions:

"1. Where a general liability policy is broad enough to cover punitive damages and makes no distinction between compensatory or punitive damages, and there is no exclusion in the policy against coverage for punitive damages, does Wyoming public policy prohibit the enforcement of punitive damage coverage in the following circumstances:

"a) For vicarious liability of the insured as to punitive damages under applicable Wyoming law and the instructions given in the Bohenna case on the basis of willful and wanton conduct?

"b) For personal liability of the insured as to punitive damages under applicable Wyoming law and the instructions given in the Bohenna case on the basis of willful and wanton conduct?

"2. Where an insurance carrier sells a general liability policy which makes no distinction between compensatory or punitive damages and does not exclude coverage for punitive damages despite the undisclosed intention to refuse to cover such damages, is the carrier estopped under Wyoming law to later deny coverage for punitive damages on the basis of undisclosed principles of public policy or has it waived any such right?

"3. Where an insurance carrier fails to reveal its intention to deny coverage for punitive damages until after the insured is already liable for such damages on the basis of a jury verdict, is the carrier estopped under Wyoming law from denying coverage for punitive damages on the basis of undisclosed principles of public policy or has it waived any such right?"

We will only address questions 1(a) and (b). Our answers in the negative will effectively answer the other questions. Facts we deem applicable, recited below, are extracted from the certification order of the United States District Court for the District of Wyoming.

In 1976, Columbia Casualty Company (hereinafter Columbia) issued to Sinclair Oil Corporation (hereinafter Sinclair) its excess insurance policy. The coverage was for $300,000, in excess of a self-insured retention (SIR) in the sum of $100,000, and a first level excess liability policy covering the next $300,000 issued by Admiral Insurance Company (not a party in this case). In other words, the Columbia policy covered any loss in an amount in excess of $400,000 to limits of $700,000. Under its self-insured retention, Sinclair had some responsibility for investigation and defense of the claim.

In May 1977, during the period of coverage provided by the Columbia policy, one Robert Bohenna was seriously injured while unloading an acid tanker at the Sinclair refinery. In May 1981, Bohenna and his wife brought suit against Sinclair in which they sought compensatory and punitive damages against Sinclair and other defendants. Upon service of the suit, Sinclair forwarded the Summons and Complaint to Columbia. Before the trial, Mr. and Mrs. Bohenna offered to settle all of the claims for the sum of $175,000. Sinclair demanded the case be settled and tendered its full $100,000 to settle. However, Admiral refused to pay the remaining $75,000, and thus, the offer was refused. Columbia was aware of the settlement offer

and the fact that it was refused by Admiral, but did not disclose its later contention that its policy did not cover any punitive damages which might be assessed in the Bohenna case.

The Bohenna case went to trial August 25, 1982, and a verdict was returned September 8, 1982. The jury attributed 55 percent negligence against Sinclair, 10 percent negligence against Mr. Bohenna, and the remainder was divided among other defendants. The jury returned a verdict for $325,000 in favor of Mr. Bohenna, and $50,000 in favor of Mrs. Bohenna for a total of $375,000. In addition, the jury found Sinclair was liable for punitive damages on the basis of willful and wanton misconduct. Upon receipt of the verdict, the court set a trial for September 15, 1982, before the same jury to determine the amount of punitive damages, pursuant to the bifurcated procedure as prescribed in *Campen v. Stone*, Wyo., 635 P.2d 1121 (1981).

After being advised of the finding of liability for punitive damages, Columbia advised Sinclair on September 14, 1982, that it would not pay punitive damages under its policy on the grounds that the State of Wyoming permitted punitive damages solely as punishment and deterrence, and not as compensation, and hence coverage would be contrary to public policy. This was the first communication between Sinclair and Columbia on the subject of coverage for punitive damages under the policy.

Sinclair then settled the punitive damages claim for the sum of $350,000. Columbia does not contend that this settlement was excessive or unjustified. The net result after offsetting a prior settlement with a co-defendant, was a payment to Mr. Bohenna in the sum of $680,000. This meant a payment of $280,000 within the coverage layer of the Columbia policy, which Sinclair paid.

Sinclair brought an action in the United States District Court for Wyoming against Columbia in November, 1982. Sinclair seeks to recover on the insurance contract, alleging that punitive damages are covered on the basis of the reasonable expectations of the insured under the policy and by reason of the policy provisions and the absence of any exclusion as to punitive damages. Columbia takes the position that insurance coverage for punitive damages is contrary to the public policy of the State of Wyoming. Sinclair also contends that the Columbia policy is enforceable under the doctrine of estoppel, or alternatively, the doctrine of waiver. It is Columbia's position that the doctrines of public policy which preclude coverage of punitive damages also preclude enforcement of such a contract by way of the doctrines of waiver or estoppel.

Columbia filed a Motion for Partial Summary Judgment which is addressed to the claims of Sinclair which seek to enforce the contract of insurance for punitive damage coverage. Columbia's motion raises the legal questions submitted by this Certification Order.

For purposes of its Motion for Summary Judgment, and for no other purpose, Columbia admits that the terms of its policy are broad enough to cover punitive damages, and that the same are payable under its policy unless payment is contrary to public policy. Columbia also admits that absent considerations of public policy the facts and circumstances of this case would estop Columbia from denying coverage under its policy and constitute a waiver of any exclusions from coverage or policy defenses.

Upon motion from Sinclair, the United States District Court certified these legal issues to the Supreme Court for the State of Wyoming because, in the court's view, they involve important and undetermined questions of Wyoming law which will be determinative of the pending partial summary judgment motion and may be determinative of all issues in this case. For purposes of this certification order the applicable facts are as stated and as reflected in the record certified herewith.

Sinclair contends under Wyoming law that 1) Wyoming public policy does not prohibit the enforcement of insurance cov-

erage, at least in regard to vicarious liability, for willful and wanton misconduct as defined by Wyoming law; 2) the policy must be construed against Columbia and in favor of coverage; 3) the absence of any exclusion against coverage for punitive damages in the policy sold by Columbia is fatal to Columbia's claims based upon unwritten precepts of public policy; 4) Columbia was required to specifically exclude punitive damages in the policy it sold to Sinclair if it did not intend to cover such damage; and 5) Columbia is estopped from denying coverage for punitive damages because of its failure to reveal its intentions and its undisclosed "Corporate Claim Policy" at the time of purchase or prior to the time the verdict was returned and while Sinclair still had an opportunity to protect itself.

With respect to questions 1(a) and (b), Columbia contends that:

"1) In Wyoming, punitive damages are imposed upon persons guilty of willful and wanton misconduct solely for purposes of punishment and deterrence, and not for purposes of compensation. These goals of punishment and deterrence are frustrated if the wrongdoer has the right to contract with an insurance company for payment of amounts imposed as punitive damages.

"2) The trend and weight of authority among courts confronted with the factual and legal circumstances of this case is to hold that insurance coverage for punitive damages is contrary to public policy.

"3) The interest of the people of the State of Wyoming in preventing frustration of the salutary goals of punishment and deterrence in punitive damages cases overrides the wrongdoers interest in freedom of contract.

"4) When punitive damages are imposed against an employer under Wyoming law, there is no basis for applying the 'vicarious liability' exception to the public policy rule. To the contrary, when a corporate employer is found liable for punitive damages the reasons for invalidating punitive damage insurance coverage on public policy grounds are even more compelling."

Succinctly, Columbia contends that there can be no punishment or deterrence if Sinclair is permitted to shift the financial burden of punitive damages to its insurance carrier. We are confronted here with competing policies, and we must therefore determine which is dominant. On the one hand, we have a policy regarding the purposes of punitive damages, and on the other hand, we have a policy with respect to freedom to contract for insurance coverage.

■ We have said that the purposes and justification for punitive damages is to publicly condemn some notorious action or inaction, to punish a defendant, and to serve as a warning and deterrent to others. Punitive damages are not allowed to compensate plaintiffs nor are they designed to be a windfall. *Campen v. Stone,* supra; *Danculovich v. Brown,* Wyo., 593 P.2d 187 (1979); *Town of Jackson v. Shaw,* Wyo., 569 P.2d 1246 (1977).

■ Courts unanimously recognize the basic right of persons, real and artificial, to freely enter into contracts. It was said in *Baltimore & Ohio Southwestern Railway Company v. Voigt,* 176 U.S. 498, 505, 20 S.Ct. 385, 387, 44 L.Ed. 560, 565 (1900):

"* * * [T]he right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appear that they contravene public right or the public welfare. It was well said by Sir George Jessel, M.R., in Printing & Co. v. Sampson, L.R. 19 Eq. 465: 'It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that

their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract.'"

"Public policy" like "legislative intent" is a vague and nebulous concept, oft used to cover or ignore a "multitude of sins." One court was provoked to say:

" * * * Public policy is a very unruly horse and once you get astride it you never know where it will carry you. * * " *Tracey v. Franklin*, 31 Del.Ch. 477, 67 A.2d 56, 11 A.L.R.2d 990 (1949), quoting from Richardson v. Mellish, 2 Bing. (Eng) 229, and referred to in 14 Williston on Contracts § 1629 (3rd ed. 1972).

■ We will not invalidate a contract entered into freely by competent parties on the basis of public policy unless that policy is well settled, unambiguous and not in conflict with another public policy equally or more compelling.

Courts are not uniform in their determination of whether or not public policy precludes insuring against punitive damages. *Northwestern National Casualty Company v. McNulty*, 307 F.2d 432 (5th Cir.1962) and its progeny are a line of cases holding that public policy precludes insuring against punitive damages. *Skyline Harvestore Systems, Inc. v. Centennial Insurance Company*, Iowa, 331 N.W.2d 106 (1983); *Harrell v. Travelers Indemnity Company*, 279 Or. 199, 567 P.2d 1013 (1977); *Lazenby v. Universal Underwriters Insurance Company*, 214 Tenn. 639, 383 S.W.2d 1 (1964); and *Hensley v. Erie Insurance Co.*, W.Va., 283 S.E.2d 227 (1981), are a line of cases representative of the contrary view.

It is not necessary to determine which is the majority view nor are we concerned with the trend. We have never adopted a majority view solely to be aligned with a plurality nor have we detected a trend and jumped on the "band wagon." We adopt the position that most nearly comports with the jurisprudence of the State of Wyoming and appears to be the more rational.

*Northwestern National Casualty Company v. McNulty*, supra, is quoted often for setting out the argument against insurance coverage for punitive damages:

" * * * [P]ublic policy against coverage is not so much to prevent encouragement of wrong-doing by obstructing the hopes of profit; it is rather to make effective the discouragement of wrong-doing by the imposition of punishment. Where a person is able to insure himself against punishment he gains a freedom of misconduct inconsistent with the establishment of sanctions against such misconduct. It is not disputed that insurance against criminal fines or penalties would be void as violative of public policy. The same public policy should invalidate any contract of insurance against the civil punishment that punitive damages represent.

"The policy considerations in a state where, as in Florida and Virginia, punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would then be punishing itself for the wrong committed by the insured." Id., at 440.

Cases we have cited representing a contrary view criticize the McNulty rationale. We will not repeat this criticism nor will we

attempt to reconcile or distinguish McNulty. Suffice it to say we choose to adopt a different philosophy.

The court in *Lazenby v. Universal Underwriters Insurance Company,* supra, 383 S.W.2d at p. 5, reasoned:

" * * * We, however, are not able to agree the closing of the insurance market, on the payment of punitive damages, to such drivers would necessarily accomplish the result of deterring them in their wrongful conduct. * * *

" * * * Then, to say the closing of the insurance market, in the payment of punitive damages, would act to deter guilty drivers would in our opinion contain some element of speculation.

" * * * [W]e think the average policy holder reading this language would expect to be protected against all claims, not intentionally inflicted.

"There is often a fine line between simple negligence and negligence upon which an award for punitive damages can be made.

"Public policy is the present concept of public welfare or general good. [Citations.] Public policy is practically synonymous with public good and unless the private contract is in terms of such a character as to tend to harm or injure the public good, public interest on public welfare or to violate the Constitution, laws, common or statutory, or judicial decisions of the State, it is not violative of public policy nor void on that account. [Citation.]

"The insurance contract in the case at bar is a private contract between defendant and their assured, Norman Frank Crutchfield, which when construed as written would be held to protect him against claims for both compensatory and punitive damages. Then to hold assured, as a matter of public policy, is not protected by the policy on a claim for punitive damages would have the effect to partially void the contract. We do not think such should be done except in a clear case, and the reasons advanced do not make such a clear case.

"We recognize there are many factors, pro and con, involved in this matter that have not been discussed in this opinion; such as the possible affect on insurance rates paid by the public and the possible conflict of interest between the insurance company and their assured at the trial. We have weighed a great many such factors and suffice to say we do not think they are determinative of the matter."

In *Lazenby v. Universal Underwriters Insurance Company,* supra, the Tennessee Supreme Court considered similar insurance policy provisions, the law relating to punitive damages and common law precedent and reached a result different from McNulty. In Lazenby the court stated several reasons for its conclusions. It did not agree with the assumption in McNulty that punitive damages act as a deterrent to wrongful conduct and that such sanctions were effective. The court also observed that a policyholder's reasonable expectations would be that he would be protected against "all claims" including punitive damages claims. The court reasoned that there was not a clear dividing line between ordinary negligence and negligence of the type justifying an award of punitive damages, so that any denial on the basis of public policy would have to be necessarily arbitrary. The court questioned the wisdom of deciding a case on the basis of public policy unless the public policy was clear and unequivocal. The court concluded that the language of the insurance policy ought to be construed according to the ordinary rules of construction and interpretation without reference to public policy.

To say, as we have said, that punitive damages is to punish a wrongdoer and serve as a warning and deterrent to others falls short of establishing a clear and unequivocal public policy which precludes insuring against punitive damages. Often there is a fine line between conduct justifying punitive damages and conduct not justifying such damages.

In *Danculovich v. Brown,* supra, we carefully considered the relationship of

"willful and wanton" misconduct to negligence in its varied degrees.

> "The intent in willful and wanton misconduct is not an intent to cause the injury, but it is an intent to do an act, or an intent to not do an act, in reckless disregard of the consequences, and under such circumstances and conditions that a reasonable man would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another. [Citation.]" Id., at p. 193.

The holding in Danculovich recognized the existence of a "claim" for punitive damages ·for willful and wanton misconduct in addition to a claim for compensatory damages for negligence. Consequently, where, as here, the insurance carrier has broadly defined coverage through its "all claims" clause, the insured has a reasonable expectation of coverage for its negligence and for its willful and wanton actions unless they are expressly excluded.

■ An insurance policy to indemnify an insured for damages he is required to pay as a result of willful and wanton misconduct should not be regarded as contrary to public policy unless the fact of insurance coverage can be related in some substantial way to the commission of such wrongful acts. *Isenhart v. General Casualty Company of America*, 233 Or. 49, 377 P.2d 26 (1962). We know of no studies, statistics or proofs which indicate that contracts of insurance to protect against liability for punitive damages have a tendency to make willful or wanton misconduct more probable, nor do we know of any substantial relationship between the insurance coverage and such misconduct. Neither is there any indication that to invalidate insurance contracts that protect against liability for punitive damages on grounds of public policy would have any tendency to deter willful and wanton misconduct.

The notion that the specter of punitive damages serves as a warning and deterrent is pure speculation. It has never been demonstrated, so far as we know, that a person has been deterred from willful and wanton misconduct because of the potential for punitive damages. Punishment is perhaps the only actual goal realized in a punitive damage award. *First Bank (N.A.)—Billings v. Transamerica Insurance Co.*, 679 P.2d 1217 (Mont.1984).

Certified question 1(a) asks, " * * * Does Wyoming public policy prohibit the enforcement of punitive damages coverage * * * for vicarious liability of the insured as to punitive damages * * * on the basis of willful and wanton conduct?"

> "In almost all jurisdictions which disallow insurance coverage for punitive damages, an exception is recognized for those torts in which liability is vicariously imposed on the employer for a wrong of his servant." *Dayton Hudson Corporation v. American Mutual Liability Insurance Company*, Okl., 621 P.2d 1155, 1160 (1980).

■ While the public policy arguments that exemplary damages serve to punish and deter are not so strong with respect to vicarious liability, we do not believe a limited holding is warranted in this situation. The basis for the imposition of vicarious liability for punitive damages upon a corporation or other employer is substantially the same for imposing liability on any wrongdoer, that is punishment, deterrent and warning. The presumptive deterrent is that an award of punitive damages will encourage the employer to exercise closer control over his employees or facilities. *Campen v. Stone*, Wyo., supra; and *Harrell v. Travelers Indemnity Company*, supra.

■ We hold that it is not against the public policy of the State of Wyoming to insure against either liability for punitive damages imposed vicariously based on willful and wanton misconduct or personal liability for punitive damages imposed on the basis of willful and wanton misconduct. We answer certified questions 1(a) and (b) in the negative. The answer to these questions effectively answers the other questions certified.