2004 WY 1

**E. Michael LIEBERMAN, Appellant (Defendant),**

v.

**WYOMING.COM LLC, a Wyoming Limited Liability Company, Appellee (Plaintiff).**

No. 01–193.

Supreme Court of Wyoming.

Jan. 13, 2004.

Representing Appellant: William D. Bagley of Bagley, Karpan, Rose & White, LLC, Cheyenne, Wyoming.

Representing Appellee: Alexander K. Davison, Wendy J. Curtis, and Terry W. Connolly of Patton & Davison, Cheyenne, Wyoming. Argument by Mr. Connolly.

Before HILL, C.J., and GOLDEN, LEHMAN,* KITE, and VOIGT, JJ.

GOLDEN, Justice.

[¶ 1] Wyoming.com LLC (hereinafter "Wyoming.com") is a Wyoming limited liability company of which E. Michael Lieberman was a member. In 1998, Lieberman filed a notice of withdrawal of member with Wyoming.com, and the remaining members of Wyoming.com accepted Lieberman's withdrawal as tendered. The parties subsequently could not agree on the financial consequences of Lieberman's withdrawal and filed a petition for declaratory judgment on the issue. Ultimately, the district court, by way of summary judgment, ordered liquidation of Lieberman's equity interest at its capital account value as of the date of his withdrawal as a member. Lieberman appeals.

[¶ 2] The Wyoming LLC Act contains no provision relating to the fate of a member's equity interest upon the member's dissociation. Thus, it was entirely up to the members of Wyoming.com to contractually provide for terms of dissociation. Upon careful review of all the agreements entered into by the parties regarding Wyoming.com, we determine that the agreements contain no provision regarding the equity interest of a dissociating member. Since we can find no

* Chief Justice at time of oral argument

provision mandating a different result, Lieberman retains his equity interest. Lieberman is under no obligation to sell his equity interest, and Wyoming.com is under no obligation to buy Lieberman's equity interest. The question of valuation is moot. The decision of the district court liquidating Lieberman's equity interest is reversed, and we remand to the district court for a declaration of the parties' rights consistent with this opinion.

## ISSUES

[¶ 3] Lieberman presents the following issues for our review:

1. What became of Lieberman's ownership interest?

2. Is there anything in the Wyoming statute or the operating agreement of the parties that requires Lieberman to sell, or the company to purchase, his equity?

3. Absent agreement can the majority members of a limited liability company can not [sic] acquire the profits and growth interest ("equity") of the minority member.

Wyoming.com presents these issues:

1. The district court did not err in finding that the value of Lieberman's equity interest should be determined by the process found in the operating agreement.

2. The district court did not err in finding that Lieberman's interest in Wyoming.com should be valued at the date of his withdrawal.

## FACTS

[¶ 4] This is the second time this case has been before this Court on appeal. The facts as stated in *Lieberman v. Wyoming.com LLC*, 11 P.3d 353 (Wyo.2000) (*Lieberman I*), are as follows:

On September 30, 1994, Steven Mossbrook, Sandra Mossbrook, and Lieberman created Wyoming.com LLC by filing Articles of Organization with the Wyoming Secretary of State. The initial capital contributions to Wyoming.com were valued at $50,000. Lieberman was vested with an initial capital contribution of $20,000, to consist of services rendered and to be rendered. According to the Articles of Organization, Lieberman's contribution represented a 40% ownership interest in the LLC. The Mossbrooks were vested with the remaining $30,000 capital contribution and 60% ownership interest. In August of 1995, the Articles of Organization of Wyoming.com were amended to reflect an increase in capitalization to $100,000. The increase in capitalization was the result of the addition of two members, each of whom was vested with a capital contribution of $25,000, representing a 2.5% ownership interest for each new member. Despite the increase in capitalization, Lieberman's ownership interest, as well as his stated capital contribution, remained the same.

On February 27, 1998, Lieberman was terminated as vice president of Wyoming.com and required to leave the business premises. The other members of Wyoming.com met the same day and approved and ratified the termination. On March 13, 1998, Lieberman served Wyoming.com and its members with a document titled "Notice of Withdrawal of Member Upon Expulsion: Demand for Return of Contributions to Capit[a]l." In addition to giving notice of his withdrawal from the company, Lieberman's notice demanded the immediate return of "his share of the current value of the company," estimating the value of his share at $400,000, "based on a recent offer from the Majority Shareholder."

In response to Lieberman's notice of withdrawal, the members of Wyoming.com held a special meeting on March 17, 1998, and accepted Lieberman's withdrawal. The members also elected to continue, rather than dissolve, Wyoming.com. Additionally, they approved the return of Lieberman's $20,000 capital contribution. However, Lieberman refused to accept the $20,000 when it was offered.

Wyoming.com filed suit in June of 1998 asking for a declaration of its rights against Lieberman. Lieberman filed suit the same month requesting dissolution of Wyoming.com, and the actions were consolidated. After a hearing on cross motions for summary judgment,

the district court granted Wyoming.com's motion for summary judgment and denied Lieberman's motion for partial summary judgment. The district court ruled that, because the remaining members of Wyoming.com LLC agreed to continue the business under a right to do so in the Articles of Organization, the company was not in a state of dissolution. The district court further ruled that Lieberman had the right to demand return of only his stated capital contribution, $20,000, which the district court ordered to be paid in cash. Lieberman appealed. *Id.* at 355–56 (footnotes omitted).

[¶ 5] In *Lieberman I*, this Court agreed that Wyoming.com was not in a state of dissolution. With regard to Lieberman's demand for the return of his capital contribution we stated:

Lieberman claims the term "contribution to capital" found in Wyo. Stat. Ann. § 17–15–120 should be interpreted to encompass the fair market value of his interest in the LLC and that his return should not be limited to the amount of his initial capital contribution. At this juncture, a distinction must be drawn between withdrawal of a member's capital contribution and the withdrawal from membership in an LLC, often termed dissociation. After a thorough review of § 17–15–120, we conclude nothing in that provision contemplates a member's rights upon dissociation. Besides the fact that § 17–15–120 speaks only to withdrawal of capital contributions, other provisions in the LLC act support our conclusion that § 17–15–120 does not govern dissociation. The following passage from § 17–15–119, which controls division of profits, envisions withdrawal of capital contribution without dissociation: "If the operating agreement does not so provide, distributions shall be made on the basis of the value of the contributions made by each member to the extent they have been received by the limited liability company and have not been returned." This quoted material clearly contemplates a situation where a member has withdrawn some (or even all) of his capital contribution but has not dissociated as a member. We conclude a withdrawal of capital contributions pursuant to § 17–15–120 does not also govern a member's rights upon dissociation.

*Id.* at 359. This Court thus held that, pursuant to statute, Lieberman was entitled to the return of his capital contribution, regardless of his status as a member of Wyoming.com. *Id.* Since Lieberman expected more, however, we remanded the case "because it is unclear what became of Lieberman's ownership or equity interest (as represented by a membership certificate)" requiring further proceedings "for a full declaration of the parties' rights." *Id.* at 361.

[¶ 6] Upon remand, no new evidence was introduced. Wyoming.com filed a motion for partial summary judgment requesting the district court to make two determinations: at what time should Lieberman's equity interest be valued and how should it be valued. Obviously, the parties proceeded under the assumptions that: Lieberman had withdrawn as a member and an equity owner; that he was entitled to his equity interest; and a valuation and buyout was necessary.

[¶ 7] Wyoming.com relied upon language in the Operating Agreement to argue that Lieberman's equity interest should be limited to the value of his capital account. The district court agreed with Wyoming.com that the Operating Agreement provided the appropriate method to fully value Lieberman's equity interest. The district court also determined that Lieberman's equity interest should be valued as of the date of his withdrawal as a member. The district court therefore granted Wyoming.com's motion for partial summary judgment on these two issues, holding that "[t]he defendant is entitled to the balance of his capitol [sic] account as of the date of defendant's withdrawal from the LLC." Since it appears that the value of Lieberman's capital account at the date of his withdrawal was negative, Lieberman appeals.[1]

1. Wyoming.com filed a motion to dismiss the appeal on the grounds that the subject order was not a final order for purposes of W.R.A.P. 1.05

and thus not appealable. This court determined that, as a practical matter, the subject order resolved all issues before the district court and

## STANDARD OF REVIEW

[¶ 8] This appeal comes to this Court from the grant of a summary judgment. Summary judgments are appropriate when there are no genuine issues as to any material fact and the moving party is entitled to a judgment as a matter of law. W.R.C.P. 56. As there are no issues of material fact in dispute, in this appeal we are called upon to review issues of law. We review issues of law de novo. *Goglio v. Star Valley Ranch Ass'n,* 2002 WY 94, ¶ 12, 48 P.3d 1072, ¶ 12 (Wyo.2002) ("We review a grant of summary judgment deciding a question of law *de novo* and afford no deference to the district court's ruling.")

## DISCUSSION

[¶ 9] The district court determined that, as a matter of law, Lieberman "is entitled to the balance of his capitol [sic] account as of the date of [his] withdrawal from the LLC." In reaching this conclusion, the district court misinterpreted the operative documents. The provision defining a member's capital account is found in the Operating Agreement:

### ARTICLE VI.

### CAPITAL ACCOUNTS

### DISTRIBUTION OF PROFITS AND LOSSES

6.1  The Company shall maintain accurate records of the Capital Accounts of the Members. Each Member's capital account shall be credited with:

 a.  The amount of money the Member has contributed to the Company.

 b.  The fair market value of property the partner has contributed to the Company.

 c.  The Member's distributive share of Company income and gain.

Each Member's capital account shall be debited with:

 a.  The amount of money distributed to the Member by the Company.

 b.  The fair market value of property distributed to the Member by the Company.

 c.  The Member's distributive share of Company loss and deduction.

6.2  Upon liquidation of the Company (or any Member's interest in the Company), liquidating distributions shall in all cases be made in accordance with the positive capital account balances of the Members. If any Member has a deficit balance in his capital account following the liquidation of his interest in the Company, as determined after taking into account all capital account adjustments for the Company taxable year during which such liquidation occurs, he is unconditionally obligated to restore the amount of such deficit balance to the Company by the end of such taxable year (or, if later, within 90 days after the date of such liquidation).

6.3  The Members may from time to time declare, and the Company may distribute, accumulated profits determined not necessary for the cash needs of the Company's business. Unless otherwise provided, retained profits shall be deemed an increase in capital contributions of the Company.

6.4  Any distribution of profits declared by the Members and distributed by the Company shall be distributed to the Members according to the percentage of ownership interest of each Member as reflected in the Company records.

6.5  All losses reflected in the books of the Company shall be distributed to the Members according to the percentage of adjusted basis of each Member to the whole of the adjusted bases of all Members. The adjusted basis of each Member shall be defined as equaling the amount of money and the adjusted basis of property contributed or loaned to the Company by the Member, plus the Member's share of the Company's liabilities, less the accumulated losses allocated to the Member. When the adjusted bases of all Members is zero, losses shall be distributed to the Members according to the percentage of ownership interest of each Member as reflected in the Company records.

thus was a final appealable order and denied the            motion to dismiss.

[¶ 10] In granting summary judgment, the district court relied upon paragraph 6.2. However, paragraph 6.2 contains no provision addressing the rights and obligations of the members with regard to a member who has withdrawn. Paragraph 6.2 provides a method for distributing capital upon liquidation. It contains no indication of when liquidation can or must occur. It does not mandate a buyout or a liquidation of a member's equity interest. As such, it has no application to the immediate issue and the district court's reliance upon it was misplaced.

■ [¶ 11] Although we could end our discussion here, this appeal involves solely issues of law. In the interest of judicial economy, we deem it prudent to resolve the present issues. Returning then to our question upon remand, what has become of Lieberman's equity interest? This Court began the process of attempting to determine the fate of Lieberman's equity interest in *Lieberman I*:

Having determined that § 17–15–120 does not control a member's rights upon dissociation, we must determine what became of Lieberman's interest, other than his capital contribution, in Wyoming.com. Unfortunately, it is unclear from the district court's decision letter precisely what became of Lieberman's ownership interest. The Articles of Organization of Wyoming.com credited Lieberman with a 40% ownership interest in Wyoming.com, and he now argues he is entitled to payment for this interest at fair market value. In the alternative, he contends he retains that 40% interest because the district court has not resolved that portion of the parties' dispute. Wyoming.com disagrees.

We begin by examining Lieberman's notice of withdrawal. Lieberman strongly disputes any contention that he has simply forfeited his interest, other than his capital contribution, in the LLC. After examining the notice of withdrawal, we cannot say, as a matter of law, that Lieberman forfeited his interest upon his withdrawal because nothing in his withdrawal indicates his intent to do so. Indeed, Lieberman's demand for "his share of the current value of the company," whose value he estimated at $400,000, "based on a recent offer from the Majority Shareholder," indicates he would not easily part with, much less forfeit, his interest. Because we cannot say that, as a matter of law, Lieberman's withdrawal amounted to forfeiture of his interest, and because there is no statutory provision governing dissociation, we look to Wyoming.com's Operating Agreement to determine Lieberman's remedy.

Under the Wyoming.com's Operating Agreement, a member's equity interest was to be represented by a membership certificate. The Operating Agreement provides:

### ARTICLE IV
#### Membership Certificates and their Transfer

4.1 **Certificates.** Membership Certificates representing equity interest in the Company will be in the form determined by the Members. Membership Certificates must be signed by the President and by all other Members. The name and address of the person to whom the Membership Certificate is issued, with the percentage of ownership represented by the certificate, must be entered in the Certificate Register of the Company. In case of a lost, destroyed or mutilated Membership Certificate, a new one may be issued on the terms and indemnity to the Company as the Members may prescribe.

4.2 **Certificate Register.** A Certificate Register will be maintained showing the names and addresses of all members, their total percentage of ownership represented by Membership Certificates, and their respective amount of capital contribution. Any and all changes in Members or their amount of capital contribution may be formalized by filing notice of the same with the Secretary of State by amendment of the Articles of Organization.

4.3 **Transfers of Shares.** Any Member proposing a transfer or assignment of his Certificate must first notify the Company, in writing, of all the details

and consideration for the proposed transfer or assignment. The Company, for the benefit of the remaining Members, will have the first right to acquire the equity by cancellation of the Certificate under the same terms and conditions as provided in the formal Articles of Organization as filed with the Wyoming Secretary of State for Members who are deceased, retired, resigned, expelled, or dissolved.

If the Company declines to elect this option, the remaining Members who desire to participate may proportionately (or in the proportions as the remaining Members may agree) purchase the interest under the same terms and conditions first proposed by the withdrawing Member.

If the transfer or assignment is made as originally proposed and the other Members fail to approve the transfer or assignment by unanimous written consent, the transferee or assignee will have no right to participate in the management of the business and affairs of the Company or to become a Member. The transferee or assignee will only be entitled to receive the share of the profit or other compensation by way of income and the return of contributions to which that Member would otherwise be entitled.

Provision 2.5 provides:

2.5 **Quorum.** At any meeting of the Members, a majority of the equity interests, as determined from the capital contribution of each Member as reflected by the books of the Company, represented in person or by proxy, will constitute a quorum at a meeting of Members.

Provision 2.7 provides:

2.7 **Voting by Certain Members.** Membership Certificates standing in the name of a corporation, partnership or Company may be voted by the officer, partner, agent or proxy as the Bylaws of the entity may prescribe or, in the absence of such provision, as the Board of Directors of the entity may determine. Certificates held by a trustee, personal representative, administrator, executor, guardian or conservator may be voted by him, either in person or by proxy, without a transfer of the certificates into his name.

Under these provisions, it is clear that a member's interest in Wyoming.com was to be represented by membership certificates. There is nothing in the record indicating what became of Lieberman's membership certificate; there is no indication it has been canceled or forfeited.

Wyoming.com's action against Lieberman was commenced as a declaratory judgment action. The stated purpose of the Uniform Declaratory Judgments Act is "to settle and to afford relief from uncertainty and insecurity with respect to legal relations * * *." Wyo. Stat. Ann. § 1–37–114 (Lexis 1999). The act is to be liberally construed to this end. *Id.; Reiman Corp. v. City of Cheyenne*, 838 P.2d 1182, 1185 (Wyo.1992); *In re General Adjudication of All Rights to Use Water in the Big Horn River System*, 753 P.2d 76, 114 (Wyo.1988); *Brimmer v. Thomson*, 521 P.2d 574, 577 (Wyo.1974).

> As a measure of preventive justice, the declaratory judgment probably has its greatest efficacy. It is designed to enable parties to ascertain and establish their legal relations, so as to conduct themselves accordingly, and thus avoid the necessity of future litigation.

*Reiman Corp. v. City of Cheyenne*, 838 P.2d at 1185 (quoting Edwin M. Borchard, *The Declaratory Judgment—A Needed Procedural Reform (Part II)*, 28 Yale L.J. 105, 110 (1918)). Here, the parties remain uncertain as to their legal relationship because it is unclear what became of Lieberman's ownership or equity interest (as represented by a membership certificate). Therefore, we conclude it appropriate to remand to the district court for a full declaration of the parties' rights.

*Lieberman I*, 11 P.3d at 360–61 (footnote omitted).

[¶ 12] Essentially, in *Lieberman I* this Court determined that further information might be available to help identify the contractual rights and obligations of the members upon the withdrawal of a member.

Despite this Court's suggestion that the membership certificates might contain applicable contractual language, upon remand, the parties elected to introduce no additional evidence. Thus, this case returns to us with the same record as was available in *Lieberman I*.

[¶ 13] Since Lieberman has not voluntarily forfeited his equity interest, this Court must look to the agreements entered into by the members of Wyoming.com to determine the rights and obligations of the members with regards to a member who has dissociated.[2] The rights and obligations of the members of Wyoming.com are determined pursuant to the operating agreements of Wyoming.com. The record reveals that the parties entered into "Articles of Organization of Wyoming.com LLC" (the "Articles") and an "Operating Agreement of Wyoming.com LLC" (the "Operating Agreement"). These agreements establish Wyoming.com, provide for Wyoming.com's operation, and set forth the mutual obligations between each of Wyoming.com's members. At all times the members have been free to contract any provision they desired, so long as the provision did not conflict with the limited requirements of the Wyoming LLC Act. Determining the fate of Lieberman's equity interest requires this Court to construe these agreements.

[¶ 14] A contract may consist of several documents, *Union Pacific Resources Co. v. Texaco, Inc.*, 882 P.2d 212, 219 (Wyo. 1994), which this Court reviews as a whole with the goal of determining the intention of the contracting parties as expressed by their own words.

> The primary purpose in interpreting or construing a contract is to determine the intent and understanding of the parties, and our initial inquiry centers on whether the language of the contract is clear and unambiguous. *Reed v. Miles Land and Livestock Co.*, 2001 WY 16, ¶ 10, 18 P.3d 1161, ¶ 10 (Wyo.2001). The interpretation

and construction of a contract are done by the court as a matter of law. *Id.* Where an agreement is in writing and the language is clear and unambiguous, the parties' intent is to be secured from the four corners of the contract. *Cliff & Co., Ltd. v. Anderson,* 777 P.2d 595, 598 (Wyo.1989). We consider the contract as a whole, taking into consideration the relationship between the various parts. *Id.*

*Collins v. Finnell,* 2001 WY 74, ¶ 15, 29 P.3d 93, ¶ 15 (Wyo.2001).

[¶ 15] The operating agreements of Wyoming.com vest Lieberman with an ownership interest. Lieberman can only be divested of this ownership interest if the members of Wyoming.com contracted for such divestment. Wyoming.com argues that Lieberman's withdrawal as a member mandates his withdrawal as an equity owner, thus triggering a liquidation of his equity interest. In *Lieberman I,* this Court clarified that "[u]nder the Wyoming LLC act, a member's interest in an LLC consists of economic and non-economic interests." *Id.* at 357. These interests are distinct. It is clear from Lieberman's notice of withdrawal that he had no intention of forfeiting his economic, or equity, interest in the company. Lieberman's withdrawal regarded his non-economic membership interest only.

[¶ 16] The operating agreements clearly anticipate a situation where a person could be an equity owner in Wyoming.com but not a member. Provision 4.3 of the Operating Agreement, quoted above, provides that, if a transferee of an ownership interest is not unanimously approved by the remaining members, the transferee maintains the rights of equity ownership but will not be a member.[3] Logically, given the absence of any contractual provision to the contrary, there is no reason to treat a withdrawing member any differently from someone who buys into Wyoming.com without becoming a member. Thus, Lieberman is not a member of Wyoming.com, but he maintains his equity inter-

---

2. Our review is limited to the agreements between the parties because, as stated previously, there is no statutory provision regarding the rights and obligations of members upon the dissociation of a member.

3. Wyo. Stat. Ann. § 17–15–122 contains a similar provision regarding the transferability of interest. The transferee does not become a member without unanimous approval of all members.

est and all rights and obligations attendant thereto.

[¶ 17] The parties essentially admit this in their respective briefs. Lieberman argues that there is nothing in the agreements allowing Wyoming.com to acquire his ownership interest at less than fair market value, while Wyoming.com argues that there is nothing in the agreements requiring Wyoming.com to pay fair market value for Lieberman's ownership interest. Both arguments are correct. There simply is no contractual agreement that any party must buy or sell an ownership interest for any amount.

■ [¶ 18] Having failed to contractually provide for mandatory liquidation or a buy-out, the parties are left in status quo. We have long held that it is the duty of this Court to construe contracts made between parties, not to make a contract for them. *Collins,* ¶ 21; *Flora Const. Co. v. Bridger Valley Elec. Ass'n, Inc.,* 355 P.2d 884, 886 (Wyo.1960) ("it is not the duty of the court to make a contract for the parties"). We must abide by the terms of their contract. This is especially so since the parties are asking us to create terms and conditions which do not exist in their contract.[4] We decline to alter the contract as written and accepted by these parties in the name of contract interpretation. We will enforce the contract as written and accepted by the parties.[5] Lieberman

maintains his equity interest in Wyoming.com.

## CONCLUSION

[¶ 19] Lieberman has withdrawn as a member of Wyoming.com and all remaining members unanimously accepted his withdrawal as a member. Lieberman thus is no longer a member of Wyoming.com. Lieberman does, however, maintain his equity interest in Wyoming.com. There is no contractual provision for a buy-out of his equity interest. Therefore Lieberman cannot force Wyoming.com to buy his interest, and Wyoming.com cannot force Lieberman to sell his interest. Because the members of Wyoming.com failed to contractually provide for a buy-out, Lieberman remains an equity holder in Wyoming.com. There are no further rights or obligations of the parties for this court to construe with regards to this situation. The grant of summary judgment is reversed and the matter remanded to the district court for a declaration of the parties' rights consistent with this opinion.

LEHMAN, Justice, dissenting, with whom KITE, Justice, joins.

[¶ 20] I respectfully dissent. I agree that paragraph 6.2 of the Operating Agreement only provides a method for distributing capital upon liquidation and that the district court erred in relying on that subsection to find that Lieberman was entitled to only his

---

4. This Court would be required to supply a liquidation or buy-out provision, including a valuation method, with no evidence as to what these parties intended when they formed Wyoming.com.

5. In *Roussalis v. Wyoming Medical Center, Inc.,* 4 P.3d 209, 245 (Wyo.2000), rejecting one contracting party's claim of unconscionability, this Court said:
   Our reluctance to redraw or nullify the provisions of a contract made by competent parties draws strength from the eloquent statement from the United States Supreme Court which we favorably quoted in *Sinclair Oil Corp.* [*v. Columbia Cas Co.,* 682 P.2d 975 (Wyo.1984)]:
   "The right of private contract is no small part of the liberty of the citizen, and that the usual and most important function of courts of justice is rather to maintain and enforce contracts, than to enable parties thereto to escape from their obligation on the pretext of public policy, unless it clearly appears

   that they contravene public right or the public welfare. It was well said by Sir George Jessel, M.R., in Printing & Co. v. Sampson, L.R. 19 Eq. 465: 'It must not be forgotten that you are not to extend arbitrarily those rules which say that a given contract is void as being against public policy, because if there is one thing which more than another public policy requires it is that men of full age and competent understanding shall have the utmost liberty of contracting, and that their contracts, when entered into freely and voluntarily, shall be held sacred, and shall be enforced by courts of justice. Therefore, you have this paramount public policy to consider—that you are not lightly to interfere with this freedom of contract.' "
   *Id.* at 978–79 (quoting *Baltimore & Ohio Southwestern Railway Co. v. Voigt,* 176 U.S. 498, 505, 20 S.Ct. 385, 387, 44 L.Ed. 560, 565 (1900)).

capital contribution upon withdrawal. ¶ 10. I also agree with the majority that a thorough review of the Operating Agreement discloses no express provision for dealing with a dissociated member's equity interest. ¶ 13 and n. 2.

[¶ 21]   However, I must disagree with the majority's determination of the consequence for the failure to provide such a provision. As the majority noted in ¶ 14, we must review the contract of the parties as a whole with the goal of determining the intent of the contracting parties.  The right of a member to withdraw from membership in the LLC is evidenced in the provisions of the operating agreement.  Also clearly expressed is the right of the remaining members to continue the business after such a withdrawal.  The provision addressing this right states:

> 9.  Continuity. The remaining members of the LLC, providing they are two or more in number, will have the right to continue the business on the death, retirement, resignation, expulsion, bankruptcy or dissolution of a member or occurrence of any other event which terminates the continued membership of a member in this LLC, in accordance with the voting provisions of the Operating Agreement of the Company.

This provision allows any member to terminate his membership in Wyoming.com by taking any of the listed actions and provides the remaining members the right to continue the business.  This provision evidences the parties' intent to allow a member to completely terminate his membership in the LLC without also terminating the LLC. Hand in hand with these rights is the implication that should the remaining members elect to continue, they will have to compensate the withdrawing member for his interest in some manner.  It seems intuitive that if the parties allowed for withdrawal and continuation, they must have had some intent to deal with those events.  Because the provision mentions nothing of forfeiting the interest or simply becoming a non-member equity owner, the agreement to continue thus implies that there must be some sort of buyout.

[¶ 22]   Furthermore, the LLC statutory scheme implies that, absent other agreement, a member has a right to terminate his continued membership in the LLC and be compensated for this interest. As we stated in *Lieberman I*, at 357, an LLC is a hybrid organization including characteristics of both a partnership and a corporation.  At the time the legislature enacted the original LLC statutes, an important consideration was the tax ramifications of the newly created entity. At that time, in order to obtain taxation as a partnership, an LLC could have no more than two of four corporate characteristics: limited liability, central management, free transferability of interests, and continuity of life.  Franklin E. Gevurtz, *Squeeze-outs and Freeze-outs in Limited Liability Companies*, 73 Wash.U.L.Q. 497, 515 n. 96 (1995) (citing Rev. Rul. 93–6, 1993–1 C.B. 229).  The LLC entity provided for limited liability and central management.  Therefore, to avoid corporate taxation, the typical LLC statutes choose to utilize partnership principles, rather than corporate principles, for exiting members in order to avoid the LLC having continuity of life.  *Id.*

[¶ 23]   Partnership exit rules ordinarily allow for any partner to dissolve the firm at any time and demand liquidation and accordingly be paid for his equity interest.  *Id.* at 502.  *See also* Wyo. Stat. Ann § 17–21–601. The legislature clearly recognized this as the normal partnership rule and impliedly endorsed such a rule by providing for an exception to this rule if the members agreed otherwise in their operating agreement.  Wyo. Stat. Ann. § 17–15–123.  In a sense, carrying on the business following a terminating event became the exception to the general rule that the business would cease when a member left for any reason. Thus, the resulting implication is a member may terminate his membership in an LLC and must be paid for this interest unless otherwise provided.

[¶ 24]   Therefore, I reach the conclusion that under the terms of the LLC as provided by the Articles of Organization and Operating Agreement, and under the statute, Lieberman could withdraw as a member of Wyoming.com resulting in a forced buyout of his entire interest.   The majority concludes, "Lieberman's withdrawal regarded his non-economic membership interest only." ¶ 15.  I cannot agree with this conclusion.  While a

member's interest does in fact consist of an economic and non-economic interest, a withdrawing member does not envision that his withdrawal will result in this split in his interest. As we noted in *Lieberman I,* at 355–56, Lieberman demanded "his share of the current value of the company," which value he estimated at $400,000, "based on a recent offer from the Majority Shareholder." Clearly Lieberman intended to withdraw his entire interest from the LLC. As such, Lieberman essentially declared his intention to no longer be associated with the LLC. Having accepted this withdrawal, the remaining members were now required and expected to compensate Lieberman for his interest.

[¶ 25] The majority has recognized this and stated, "the parties proceeded under the assumptions that: Lieberman had withdrawn as a member and an equity owner; that he was entitled to his equity interest; and a valuation and buyout was necessary." ¶ 6. However, they now refuse to provide relief for this situation. In fact, the majority's resolution has created a situation where the remaining members are in a position of power to dictate the terms of any negotiations for a buyout. The remaining members are now conceivably in a position to retain earnings and avoid distributions, but as an equity owner Lieberman would still be required to pay taxes on those earnings. Additionally, Lieberman is no longer a member. He will not be drawing the salary of the member or controlling his equity interest in any manner. While it could be said that this situation arose because of Lieberman's withdrawal, it should be noted that under the majority's analysis the result would apply equally to an expelled member. In such an instance, some of the members could expel a member and then refuse to negotiate for a buyout. Such a result begs for the oppression of one party. While I agree with the majority that it is not our duty to write contract provisions for parties that have failed to do so, I believe it would be much worse to fail to provide a remedy.

[¶ 26] Therefore, I would provide such a remedy. Because the Operating Agreement does not provide for a valuation method, I look to the statutes to see if the legislature provided a default valuation method. As we said in *Lieberman I,* express provisions for valuing a member's share when that member terminates his membership in the LLC do not exist. However, I do not believe this requires us to unilaterally create a valuation method. The statute expressly provides for the distribution of assets on dissolution. Wyo. Stat. Ann. § 17–15–126. Granted, as we stated in *Lieberman I,* Lieberman is not entitled to a distribution of assets upon dissolution under this section because there was no dissolution. *Lieberman I,* at 358. However, this statute would be a proper valuation tool. This conclusion logically flows from the fact that the general rule is that an LLC must be dissolved upon the termination of a member's membership in the LLC, and the exception to this rule is when the operating agreement contains a provision for carrying on the business. If such a carrying on provision is not placed in the operating agreement, the members receive a distribution in conformance with the provisions of Wyo. Stat. Ann § 17–15–126. The legislature has established this as the proper method of discharging members' equity interests. I see no reason to value the departing member's share differently when the business carries on and only one member departs.

[¶ 27] Therefore, absent a provision in the operating agreement, a member's equity interest should be valued at what he would have received had the business been dissolved on the day he terminated his membership in the LLC. I recognize that, because the business is not actually dissolving, this valuation may be difficult and will have to be based to some extent on estimates and appraisals. However, a similar valuation method is used upon the dissociation of a partner from a partnership when the partnership agreement has failed to provide for a valuation method. *See* Wyo. Stat. Ann. §§ 17–21–603(a), 17–21–701(a), (b). Presumably, then, such estimates and appraisals are attainable.

[¶ 28] Additionally, Wyo. Stat. Ann. § 17–15–126 provides that upon dissolution the proceeds are to be applied first to pay the creditors and then the remainder is to go to the members "in respect of their share of the profits and other compensation by way of

income on their contributions" and then lastly to the members "in respect of their contributions to capital." As can be seen by that statute's wording, the proceeds upon dissolution are used to extinguish debt and then are used not only to return a member's capital contribution but also to provide for the member's share of profits and other compensation by way of income on that contribution. Such a provision can encompass many things including the increase in value of any assets, any retained profits, and the goodwill of the company. Therefore, fair market value, which generally accounts for these relevant factors, would be a reasonable alternative estimate of the departing member's share.[1]

[¶ 29] Lastly, in instances where a departing member's share is to be valued as detailed above, the remaining members have elected to continue the company. Therefore, some consideration must be given to the duties and hardship the company may encounter as a result of paying the departing member's equity interest. The whole of the LLC statutes evidences the legislature's overall concern for the protection of the LLC's creditors. *See* Wyo. Stat. Ann. §§ 17-15-105, -119, -120, -126 (LexisNexis 2003). It is evident that the legislature wanted to assure that the LLC's creditors

were provided for before the LLC members. Wyo. Stat. Ann. §§ 17-15-120, -126. These observations lead me to conclude that the payment of the departing member's equity interest may take place over a reasonable period of time to avoid the liquidation of essential assets and the possible undercapitalization of the LLC. To be entitled to prolong the payment over a reasonable time, the LLC must show that immediate payment in full would jeopardize the company's ability to carry on its ordinary business and provide for its creditors. Should payment over time be required, such payment should be secured by a promissory note that provides for reasonable interest. Furthermore, until the member is paid in full, that member should still receive any distributions to which his interest is entitled much like a transferee without the right to participate in the management of the business would under Wyo. Stat. Ann. § 17-15-122 (LexisNexis 2003).

---

1. Fair market value is generally defined as the amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts. Black's Law Dictionary, 597 (6th ed.1990). *See also* Wyo. Stat. Ann § 39-11-101(a)(vi) (LexisNexis 2001) (defining fair market value as used for taxation purposes).