2008 WY 39

In the Matter of KITE RANCH, LLC, a Wyoming limited liability company:

Galen Dunmire and Rebecca Dunmire, husband and wife, as joint tenants, Appellants (Plaintiffs),

v.

POWELL FAMILY OF YAKIMA, LLC, a Washington limited liability company, Douglas Brickman, individually, and Douglas Brickman and Anne Brickman, husband and wife and as joint tenants, Appellees (Defendants).

In the Matter of Kite Ranch, LLC, a Wyoming limited liability company:

James Hedstrom and Donna Hedstrom, husband and wife, as joint tenants, Appellants (Plaintiffs),

v.

Powell Family of Yakima, LLC, a Washington limited liability company, Douglas Brickman, individually, and Douglas Brickman and Anne Brickman, husband and wife and as joint tenants, Appellees (Defendants).

Nos. S–07–0196, S–07–0197.

Supreme Court of Wyoming.

April 8, 2008.

Representing Appellants Galen Dunmire and Rebecca Dunmire: M. Gregory Weisz of Pence and MacMillan LLC, Laramie, Wyoming.

Representing Appellants James Hedstrom and Donna Hedstrom: William H. Vines of Jones, Jones, Vines & Hunkins, Wheatland, Wyoming.

Representing Appellees Powell Family of Yakima, LLC, Douglas Brickman and Anne Brickman: F. Scott Peasley and Frank D. Peasley of Peasley Law Office, Douglas, Wyoming. Argument by Mr. Frank D. Peasley.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] All of the parties to this appeal are members of Kite Ranch, LLC (Kite Ranch), a Wyoming limited liability company, which owns a ranch in Albany County. Galen and Rebecca Dunmire (Dunmires) and James and Donna Hedstrom (Hedstroms) filed a declaratory judgment action seeking a determination of the parties' respective rights in the company. Powell Family of Yakima, LLC (Powell) and Douglas and Anne Brickman (Brickmans) petitioned the district court for a preliminary injunction granting Powell the right to manage Kite Ranch during the pendency of the litigation and enjoining Dunmires and Hedstroms from interfering with its management of the limited liability company. The district court granted and subsequently amended a preliminary injunction in favor of Powell and Brickmans. Dunmires and Hedstroms appealed claiming the district court improperly amended the preliminary injunction without allowing them to be heard and the amended preliminary injunction was

improper because it did not require Powell to preserve the status quo of the limited liability company during the pendency of the litigation. We conclude the district court properly amended the order because it did not substantively change the preliminary injunction, but simply corrected a clerical error. In addition, we detect no abuse of discretion in the injunctive relief granted by the district court. Consequently, we affirm.

## ISSUES

[¶ 2] Dunmires and Hedstroms phrase the issues on appeal as:

I. Did the district court abuse its discretion by amending a preliminary injunction without a hearing and before allowing plaintiffs to respond to defendants' motion to amend the preliminary injunction?

II. Does the amended preliminary injunction improperly fail to require Defendant Powell to preserve the status quo and impermissibly allow Powell to affect the parties' substantive rights during the pendency of the action?

Powell and Brickmans do not set forth a separate statement of issues.

## FACTS

[¶ 3] In 2001, Dunmires, Hedstroms and Brickmans discussed purchasing a ranch in Albany County. The purchase price of the ranch was $ 1.1 million. They approached Powell about providing funds to help with the purchase. Powell agreed to provide $300,000 toward the purchase price of the ranch.

[¶ 4] The parties secured a loan from First National Bank (FNB) for the bulk of the purchase price. The FNB loan was evidenced by a promissory note and mortgage on the ranch property. All members, except Powell, personally guaranteed the note, and Dunmires supplied additional real property to secure the FNB loan. FNB required the borrowers to form a business entity as a condition of the loan and to limit Powell's ownership in the new entity to a "maximum of 20%." FNB also stated that the equity Powell provided could "not be accounted for through a note or mortgage."

[¶ 5] Hedstroms and Brickmans executed articles of organization for Kite Ranch on December 26, 2001. Dunmires, Brickmans, Hedstroms and Powell contributed initial capital of $1,000, with 20 percent coming from Powell and 26.66 percent from each of the other members. The articles were filed with the Wyoming Secretary of State's office. However, the members did not execute an operating agreement, even though proposed agreements were apparently circulated among them.

[¶ 6] Kite Ranch operated as a cattle ranch over the next few years, leasing its property for grazing purposes. All of the members except Powell met periodically to discuss business matters, although the meetings were not formal as no official notice was given prior to the meetings and minutes were not kept. During this time, approximately $220,000 of Powell's equity contribution was returned to it, leaving it with a capital account of approximately $80,000. Dunmires provided approximately $415,000 in funds to Kite Ranch during those years. The company's financial records indicate that Dunmires' contributions were carried as loans to the company. The company's accountant testified that Dunmires directed her to designate the funds as loans.

[¶ 7] In 2006, Powell and Brickmans became concerned about the management of the company. Powell and Hedstroms executed contradictory leases on behalf of the company, leasing the ranch property to different individuals for the 2007 grazing season. In addition, the FNB note fell into default when it matured on November 1, 2006.

[¶ 8] On January 12, 2007, Dunmires and Hedstroms filed a complaint for a declaratory judgment against Powell and Brickmans. They also named the limited liability company as an involuntary plaintiff. They sought a declaration of the parties' respective interests, rights and responsibilities with respect to the limited liability company. Powell and Brickmans responded with a petition for a temporary restraining order and preliminary injunction giving Powell management authority over the company and enjoining Dunmires and Hedstroms from exercising any management authority.

[¶ 9]  The district court denied the application for a temporary restraining order, but set a hearing on the petition for a preliminary injunction. In the meantime, Dunmires and Hedstroms filed a petition for appointment of a receiver to manage Kite Ranch. The district court heard the two pending motions on April 12, 2007. After the hearing, the district court issued a decision letter, generally granting Powell's and Brickmans' petition for a preliminary injunction and denying Dunmires' and Hedstroms' petition for appointment of a receiver. The parties could not agree on the wording of an order, and Dunmires and Hedstroms filed an objection to Powell's and Brickmans' proposed order, claiming the powers granted to Powell were overly broad. Among other things, they were concerned that Powell would sell the ranch property and/or change the members' rights with respect to the company by amending the articles of organization or adopting an operating agreement. The district court finally entered Powell's and Brickmans' version of the order, but interlineated some restrictions on Powell's management power.

[¶ 10]  The interlineated language created an inconsistency in the order—the right to mortgage and/or lease the property was both granted and denied. Consequently, Powell and Brickmans filed a motion to amend the order to clarify their right to mortgage and lease the property. The district court granted the requested relief without holding a hearing or waiting for Dunmires and Hedstroms to reply to the motion to amend the order. Dunmires and Hedstroms appealed from the amended order.

## DISCUSSION

### 1.  Procedure for Amendment of Preliminary Injunction Order

[¶ 11]  The original order granting Powell's and Brickmans' petition for a preliminary injunction stated in relevant part:

2.  As required in the absence of an operating agreement by Wyo. Stat. Ann. § 17–15–116 (Lexis Nexis 2005), the Powell Family of Yakima, LLC, as the only member of Kite Ranch, LLC with a positive capital account and an initial capital contribution of Three Hundred Thousand Dollars ($300,000.00) be and the same is awarded exclusive management authority of Kite Ranch, LLC, including those powers and rights specifically conferred by Wyo. Stat. Ann. § 17–15–104 (Lexis Nexis 2005),[1] until further order of this Court,

---

1.  Section 17–15–104 states:

(a) Each limited liability company organized and existing under this act may:

(i) Sue and be sued, complain and defend, in its name;

(ii) Purchase, take, receive, lease or otherwise acquire, own, hold, improve, use and otherwise deal in and with real or personal property, or an interest in it, wherever situated;

(iii) Sell, convey, mortgage, pledge, lease, exchange, transfer and otherwise dispose of all or any part of its property and assets;

(iv) Lend money to and otherwise assist its members, managers and employees;

(v) Purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, use, employ, sell, mortgage, lend, pledge or otherwise dispose of, and otherwise use and deal in and with shares or other interests in or obligations of other limited liability companies, domestic or foreign corporations, associations, general or limited partnerships or individuals, or direct or indirect obligations of the United States or of any government, state, territory, governmental district or municipality or of any instrumentality of it;

(vi) Make contracts and guarantees and incur liabilities, borrow money at such rates of interest as the limited liability company may determine, issue its notes, bonds and other obligations and secure any of its obligations by mortgage or pledge of all or any part of its property, franchises and income;

(vii) Lend money for its proper purposes, invest and reinvest its funds and take and hold real property and personal property for the payment of funds so loaned or invested;

(viii) Conduct its business, carry on its operations and have and exercise the powers granted by this act in any state, territory, district or possession of the United States, or in any foreign country;

(ix) Elect or appoint managers, officers, employees and agents of the limited liability company, and define their duties and authority, which may include authority also delegated to the members or managers under W.S. 17–15–117 and 17–15–118, and fix their compensation;

(x) Make and alter operating agreements, not inconsistent with its articles of organization or with the laws of this state, for the administration and regulation of the affairs of the limited liability company;

(xi) Indemnify a member or manager or former member or manager of the limited liability

*except    § 17–15–104(a)(iii);    (a)(x);*
*(a)(xii).  [Judge's initials]*

(footnote added).  The underlined part of the order was handwritten by the district judge, presumably in response to Dunmires' and Hedstroms' objections to Powell's and Brickmans' proposed order.

[¶ 12]  The powers granted to Powell under the original order included those set out in Wyo. Stat. Ann. §§ 17–15–104(a)(ii) and (vi) (LexisNexis 2005) which allowed it to lease and/or mortgage the property:

(ii) Purchase, take, receive, lease or otherwise acquire, own, hold, improve, use and otherwise deal in and with real or personal property, or an interest in it, wherever situated; [and]

. . .

(vi) Make contracts and guarantees and incur liabilities, borrow money at such rates of interest as the limited liability company may determine, issue its notes, bonds and other obligations and secure any of its obligations by mortgage or pledge of all or any part of its property, franchises and income[.]

[¶ 13]  The interlineated language, however, denied Powell the powers under § 17–15–104(a) to:

(iii) Sell, convey, mortgage, pledge, lease, exchange, transfer and otherwise dispose of all or any part of its property and assets;

. . .

(x) Make and alter operating agreements, not inconsistent with its articles of organization or with the laws of this state, for the administration and regulation of the affairs of the limited liability company; [and]

. . .

(xii) Cease its activities and surrender its certificate of organization[.]

Thus, the original order was ambiguous because it granted Powell the power to lease and mortgage the company property under § 17–15–104(a)(ii) and (vi), but denied it those powers when it withheld authority under § 17–15–104(a)(iii).

[¶ 14]  Seeking to clarify Powell's rights to mortgage and lease the ranch property, Powell and Brickmans moved to amend the order.  The district court entered an amended order which stated, in relevant part:

2.  As required in the absence of an operating agreement by Wyo. Stat. Ann. § 17–15–116 (LexisNexis 2005), the Powell Family of Yakima, LLC, as the only member of Kite Ranch, LLC with a positive capital account, and an initial capital contribution of Three Hundred Thousand Dollars ($300,000.00) be and the same is awarded exclusive management authority of the LLC, including those rights and powers specifically conferred by Wyo. Stat. Ann. § 17–15–104 (Lexis Nexis 2005), until further Order of this Court, except § 17–15–104(a)(x), (a)(xii), and § 17–15–104(a)(iii) to the limited extent that it relates to "selling" or "conveying" LLC property.

[¶ 15]  The district court entered the amended order without holding a hearing.  Dunmires and Hedstroms were unaware of

company against expenses actually and reasonably incurred by him or it in connection with the defense of an action, suit or proceeding, civil or criminal, in which he or it is made a party by reason of being or having been such member or manager, except in relation to matters as to which he or it shall be adjudged in the action, suit or proceeding to be liable to the company for negligence or misconduct in the performance of duty or to have received improper personal benefit on account thereof; and to make any other indemnification that is authorized by the articles of organization or by an article of the operating agreement or resolution adopted by the members after notice;

(xii) Cease its activities and surrender its certificate of organization;

(xiii) Have and exercise all powers necessary or convenient to effect any or all of the purposes for which the limited liability company is organized;

(xiv) Become a member of a general partnership, limited partnership, joint venture or similar association, or any other limited liability company;

(xv) Pay pensions and establish pension plans, pension trusts, profit-sharing plans, ownership interest bonus plans and option plans, and benefit or incentive plans for any or all of its current or former managers, officers, employees and agents;

(xvi) Make donations for the public welfare or for charitable, scientific or educational purposes.

the entry of the amended order and filed a response to Powell's and Brickmans' motion. They agreed that Powell should be allowed to lease the property under certain conditions but objected to Powell's ability to mortgage the property without the consent of all of the members. After becoming aware that the district court had already entered the amended order, Dunmires and Hedstroms appealed claiming the district court abused its discretion and violated their right to due process of law by amending the order without giving them an opportunity to be heard.

[¶ 16] Although Powell's and Brickmans' motion to amend cited W.R.C.P. 59(e),[2] they assert on appeal that the district court had the power, under W.R.C.P. 60(a), to correct the ambiguity in the order without holding a hearing. That rule states in pertinent part:

(a) *Clerical Mistakes.* Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.

*See, Glover v. Crayk,* 2005 WY 143, ¶¶ 6, 8, 122 P.3d 955, 957 (Wyo.2005) (construing proceeding as one properly brought under Rule 60(a) although the record was unclear as to the "exact nature of the proceedings below"). As is clear from the plain language of the rule, if the district court was truly just correcting a clerical error, it could do so at any time and no notice or hearing was required. In other words, provided the district court's action involves only correction of a clerical mistake, no due process violation occurs when that correction is made without giving the parties the opportunity to be heard.

[¶ 17] In *Glover,* ¶ 9, 122 P.3d at 958, this Court stated that in reviewing a district court's application of Rule 60(a), we apply a two-part process. First, we determine whether the correction or clarification related to a clerical or judicial mistake. We then "review the district court's order to ascertain whether it clarified or modified the original judgment." *Id.* These questions involve issues of law that we review *de novo. Id.*

[¶ 18] In *Spomer v. Spomer,* 580 P.2d 1146, 1148–49 (Wyo.1978), we discussed the process for determining whether modification of a court order was proper under Rule 60(a).

The primary focus in the discussion of Rule 60(a) must center on its scope. We think it clear that this rule was not designed as a substitute for appeal, nor to affect substantive portions of a judgment or decree. It is not intended to correct judicial, as opposed to clerical, error. The problem is essentially one of characterization.

Several tests have been suggested to facilitate the distinctions. We feel all in essence encompass the same rule. The key factor is whether or not the court reached a decision in the intentional or purposeful exercise of its judicial function. If the pronouncement reflects a deliberate choice on the part of the court, the act is judicial; errors of this nature are to be cured by appeal.... [T]he central purpose of Rule 60(a) is to effectuate the contemporaneous intent of the court and to ensure that the judgment reflects that intent. As the Tenth Circuit stated in *Blankenship [v. Royalty Holding Co.,* 202 F.2d 77, 79 (10th Cir.1953) ]:

"Courts possess the inherent power to correct errors in the records evidencing the judgment pronounced by the court so as to make them speak the truth by actually reflecting that which was in fact done. They do not, however, possess the power to correct an error by the court in rendering a judgment it did not intend to render and by such order change a judgment actually but erroneously pronounced by the court to the one the court intended to record. * * * "

In keeping with this purpose to effectuate the intent of the court, we feel that 60(a) is also designed to clarify as well as correct. In this respect, we feel the rule can prop-

---

2. Rule 59(e) states: "Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment."

erly be utilized to dispel ambiguities that exist in the record, whether that ambiguity is patent or latent. Where the intention of the court is not evident or apparent,

Rule 60(a) can be used to clarify the meaning to conform to the contemporaneous intentions of the court as then expressed.

*Id.* (some citations omitted).

[¶ 19] We have also discussed the power to correct clerical errors in the context of *nunc pro tunc* orders. A *nunc pro tunc* order may be entered in cases "where it is necessary to make the judgment speak the truth, and cannot be used to change the judgment." *Eddy v. First Wyoming Bank, N.A.-Lander,* 713 P.2d 228, 234 (Wyo.1986). *See also, Christensen v. State,* 854 P.2d 675, 682 (Wyo.1993).

[¶ 20] The district court's decision letter issued prior to the entry of the original preliminary injunction order is important to our conclusion that the change the court made to the final order was clerical. A fair reading of the decision letter, which was nine pages long and comprehensively reviewed the issues in dispute at the injunction hearing, indicates that the immediate management needs for Kite Ranch included dealing with the FNB mortgage and note, which was in default at the time of the hearing, and arranging for the ranch lands to be leased. Thus, the district court clearly intended that Powell have the right to mortgage and lease the property as part of its management authority and duties during the term of the preliminary injunction. In fact, the decision letter stated that Powell was entitled to all of the powers set out in § 17–15–104. The written order which both granted and denied Powell the authority to mortgage and/or lease the property did not accurately reflect the district court's intent. It was, therefore, simply a clerical matter to correct the order by clarifying that Powell had those management rights.

### 2. *Terms of the Preliminary Injunction*

[¶ 21] Actions for injunctive relief are authorized by Wyo. Stat. Ann. §§ 1–28–101 *et seq.* (LexisNexis 2007); however, they are, essentially, "requests for equitable relief which are not granted as a matter of right but are within the lower court's equitable discretion." *Weiss v. Pedersen,* 933 P.2d 495, 498 (Wyo.1997), *overruled on other grounds by White v. Allen,* 2003 WY 39, 65 P.3d 395 (Wyo.2003). *See also, Rialto Theatre, Inc. v. Commonwealth Theatres, Inc.,* 714 P.2d 328, 332 (Wyo.1986). Because the district court has equitable discretion in determining whether to grant injunctive relief, we review its decision for abuse of discretion, keeping in mind that injunction is an extreme remedy and the court should "proceed with caution and deliberation before exercising the remedy." *Id. See also, Polo Ranch Co. v. City of Cheyenne,* 2003 WY 15, ¶ 29, 61 P.3d 1255, 1265 (Wyo.2003).

[¶ 22] To justify an injunction, there must be a showing the potential harm is irreparable and there is no adequate remedy at law to compensate for the harm. *Weiss,* 933 P.2d at 498. "'The traditional office of injunction has been to protect property rights.'" *Id.* at 499, quoting 42 Am. Jur.2d *Injunctions* § 69 at 814 (1969). Moreover, injunctions are intended to prevent future harms, *Rialto Theatre,* 714 P.2d at 333, and the "purpose of the preliminary injunction is to preserve the status quo until the rights of the parties can be fairly inquired into and determined under equitable conditions and principles." *Simpson v. Petroleum, Inc.,* 548 P.2d 1, 3 (Wyo.1976).

[¶ 23] Powell's and Brickmans' petition for a preliminary injunction requested that Powell be granted management authority over Kite Ranch during the pendency of the action and Dunmires and Hedstroms be enjoined from exercising management authority over the company or conducting company meetings. Powell claimed it was entitled to manage the limited liability company under Wyo. Stat. Ann. § 17–15–116 (LexisNexis 2005) because there was no operating agreement and it had the only positive capital account.

[¶ 24] Section 17–15–116 states:

Management of the limited liability company shall be vested in its members, which unless otherwise provided in the operating agreement shall be in proportion to their contribution to the capital of the limited

liability company, as adjusted from time to time to properly reflect any additional contributions or withdrawals by the members; however, if provision is made for it in the articles of organization, management of the limited liability company may be vested in a manager or managers who shall be elected by the members in the manner prescribed by the operating agreement of the limited liability company. If the articles of organization provide for the management of the limited liability company by a manager or managers, unless the operating agreement expressly dispenses with or substitutes for the requirement of annual elections, the manager or managers shall be elected annually by the members in a manner provided in the operating agreement. The manager or managers, or persons appointed by the manager or managers, shall also hold the offices and have the responsibilities accorded to them by the members and set out in the operating agreement of the limited liability company.

[¶ 25] The evidence at the preliminary injunction hearing established that Powell is a member of Kite Ranch and the company's financial and tax records showed that Powell was the only member with a positive capital account.[3] The district court's decision letter accurately describes the evidence presented at the preliminary injunction hearing:

First, it is clear that Powell Family is a member of the LLC. It was named as such in the Articles of Organization, which Articles remain in effect to this day. It was a named member in the loan authorization form that Dunmire signed. Every federal income tax return filed since the LLC was formed has named Powell Family as a member. Simply stated, the evidence on this point is overwhelming and virtually uncontradicted. The Court concludes that Powell Family is, in fact, a member of the LLC.

The evidence concerning the nature of Powell Family's initial contribution to the LLC is also straightforward. While it appears there may have initially been some

discussion of a loan from Powell Family to the LLC, it is clear that this soon changed. Powell Family indicated to First National Bank on November 26, 2001 that it intended to acquire a "minority equity investment" in the LLC that was to be formed. Two days later, First National required as a contingency for its loan [to the LLC] that Powell Family's ownership interest in the LLC could not exceed 20% and that its contribution could not be accounted for through a note or mortgage. [A footnote inserted by the district court stated: Clearly, the bank was requiring that Powell Family hold an equity interest in the LLC and that its contribution must, therefore, be treated as a capital contribution rather than a debt.] No notes, mortgages, security agreements, or other written evidence of debt were ever executed in favor of Powell Family by the LLC. Income tax returns for every year since the formation of the LLC have treated this contribution as a capital contribution. There is no evidence that would indicate there was ever any agreement to pay any interest on any debt, and there is no evidence whatever to indicate that the LLC ever treated any payments to Powell Family as either debt or interest payments. The LLC's accountant testified that she has always been instructed to treat this contribution as capital, and an expert accountant testified that he could see no justification in the records for treating this contribution as anything but capital. Finally, there is no credible evidence by which this Court might reasonably conclude that this contribution was intended to be a loan. It is the Court's conclusion, therefore, that the initial contribution of $300,000 by Powell Family to the LLC was a capital contribution and that it should be treated as such. [A footnote inserted by the district court states: It should be noted that Dunmire has contributed considerable money to the LLC since its formation as well. However, it was his request that his contributions be considered and treated as debt rather than capital contribution, and the account-

---

**3.** The district court's factual findings at a preliminary injunction hearing are, necessarily, subject to being revisited at the trial of the underlying litigation. Further evidence may result in a different final ruling on these matters.

ant has complied with this request. Dunmire testified he did not realize there was a difference between a loan and a capital contribution and, because he hoped he would eventually recover his money, he asked that it be treated as debt. The end result has been an LLC that is long on debt and short on capital.]

There was evidence presented indicating Powell referred to its contribution as a loan from time to time and had, at some point, prepared an amortization schedule showing its contribution as earning interest. Nevertheless, as the district court indicated, the documents actually adopted by the company clearly showed that Powell's investment was capital rather than a loan.

[¶ 26] The company records established that Powell had received reimbursements from the company for a substantial part of its initial capital contribution and, at the time of the hearing, its capital account had been diminished to approximately $80,000. However, all the other members' capital accounts had negative balances. Applying the plain language of § 17–15–116, the district court concluded that "sole management authority of the LLC currently resides with Powell Family." Thus, it ordered that during the pendency of the litigation Powell was entitled to exclusive management powers over the limited liability company and enjoined Dunmires and Hedstroms from exercising any management authority. The court referred to § 17–15–104 as delineating Powell's management powers, but, in deference to Dunmires' and Hedstroms' concerns that Powell would sell the property or change the members' respective rights in the limited liability company, limited Powell's powers as described above.

[¶ 27] Dunmires and Hedstroms claim the amended preliminary injunction improperly failed to require Powell to maintain the status quo and, instead, allowed Powell to affect the parties' substantive rights prior to final resolution of the merits of the underlying litigation. Their primary concern seems to be that Powell should not have been granted the power to refinance the company's debt. According to Dunmires and Hedstroms, Powell improperly used its powers to pay off the FNB debt and replace it with a loan provided by Powell.

[¶ 28] In making this argument, Dunmires and Hedstroms improperly focus on Powell's actions **after** the preliminary injunction was entered. The propriety of those actions has not been addressed by the district court and, therefore, is not ripe for review by this Court. Analyzing the case at the correct point in time, we conclude that the preliminary injunction simply enforced the management rules required by Wyoming law. Section 17–15–116 plainly states that, in the absence of an operating agreement, management of a limited liability company will be vested in the members "in proportion to their contribution to the capital of the limited liability company." The district court, therefore, properly vested sole management authority over Kite Ranch in Powell, the only member with a positive capital account. Moreover, the district court's ruling that Powell was entitled to exercise the powers described in § 17–15–104 was also clearly in accord with Wyoming law. The district court attempted to address Dunmires' and Hedstroms' fears that Powell would change the status quo during the pendency of the action by prohibiting it from selling the ranch property or adopting new articles of organization or an operating agreement.

[¶ 29] They argue that, by allowing Powell to refinance the FNB obligation, the district court decided one of the primary issues of the litigation—the proper path to take with regard to company debt. They claim that Powell's actions did not maintain the status quo, but instead created a new contractual obligation that the parties did not agree to, in violation of the principles set out in *Lieberman v. Wyoming.com LLC*, 2004 WY 1, 82 P.3d 274 (Wyo.2004).

[¶ 30] Status quo is defined as "the existing state of affairs." Webster's Third New Int'l Dictionary 2230 (2002). Maintaining the status quo of an ongoing business does not mean decisions cannot be made. The FNB note was in default at the time of the preliminary injunction hearing. To do nothing (as Dunmires and Hedstroms apparently advocate) could have resulted in foreclosure and possible loss of the ranch property. Clearly,

loss of the company's primary asset would not have maintained the status quo. By being allowed to refinance the debt, Powell was, in fact, maintaining the current state of affairs, i.e. protecting the property from being lost in a foreclosure.

[¶ 31] This case is different from the situation we addressed in *Lieberman*. That case involved a member of a limited liability company who wanted to withdraw from the company. We recognized that the Wyoming Limited Liability Company Act "contains no provision relating to the fate of a member's equity interest upon the member's dissociation." *Lieberman*, ¶ 2, 82 P.3d at 275. Because the parties failed to contractually provide for mandatory liquidation or buyout of members' interests in the limited liability company, the parties were left in status quo or limbo. *Lieberman*, ¶ 18, 82 P.3d at 282. Under those circumstances, we concluded that the member who sought to withdraw simply retained his equity interest in the company because he had no legal duty to sell and the company had no duty to buy it. *Id.* at ¶¶ 18–19, 82 P.3d at 282. This Court declined to craft a remedy for the parties stating that we have "long held that it is the duty of this Court to construe contracts made between parties, not to make a contract for them." *Id.* Unlike the situation presented in *Lieberman*, § 17–15–116 does delineate who has management authority over a limited liability company when the parties have failed to contractually agree on that matter. Thus, the court did not craft a remedy for the parties. That remedy was mandated by Wyoming law.

[¶ 32] The district court did not abuse its discretion by granting a preliminary injunction giving Powell management authority over Kite Ranch during the pending litigation. As we stated above, the propriety of the specific actions taken by Powell, including the terms of the refinancing, is yet to be determined by the district court. We presume that will happen during the impending litigation. In the meantime, Powell was properly given the right to take the actions necessary to keep the company's business viable, including mortgaging and leasing the real property.

[¶ 33] Affirmed.