# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 101

APRIL TERM, A.D. 2021

September 20, 2021

REX KEITH SNYDER,

Appellant
(Defendant),

v.                                                                S-20-0203

RONDA SNYDER,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*
      Deborah Ford Mincer, Cheyenne, Wyoming.

*Representing Appellee:*
      James R. Salisbury of the Salisbury Firm, P.C., Cheyenne, Wyoming.

*Before FOX, C.J., and DAVIS*, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*\*Chief Justice at time of brief-only conference.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]   The court divided the Aimone Ranch into two parcels in 2017, as part of Rex and Ronda Snyder's divorce proceedings.[1]  The 2017 order did not specify the dividing line between the parcels or address fencing.  This dispute arose in 2019 when Rex built a fence to separate the parcels, and Ronda refused to pay half the fencing costs.  Rex then filed a motion to enforce the 2017 order and requested that the court order Ronda to accept a quit claim deed for her parcel as fenced, accept an easement over his parcel, and reimburse him for half the fencing costs.  At a June 2020 hearing the court clarified its 2017 order under W.R.C.P. 60(a) and denied Rex's claims against Ronda.

[¶2]   Rex appeals, claiming the district court improperly modified rather than clarified its 2017 order.  He further claims the court should have either clarified the 2017 order to require the parties to construct a fence and share the costs, or amended his "pleadings" under W.R.C.P. 15(b)(2) to include claims for unjust enrichment and quantum meruit.  We affirm, concluding the district court properly clarified its 2017 order under W.R.C.P. 60(a) and denied Rex's other claims.

## ISSUES

[¶3]   Rex raises three issues, which we consolidate and rephrase as:

> I. Did the district court improperly modify, rather than clarify, its 2017 order in violation of W.R.C.P. 60(a)?

> II. Did the district court err when it refused to address fencing obligations at the 2020 hearing?

## FACTS

[¶4]   Rex and Ronda stipulated to a divorce in 2016.  Following a bench trial, the district court issued an order dividing their many properties in November 2017.  The order divided the property at issue, the Aimone Ranch, into two parcels based on valuations set forth in Craig Turner's appraisal.  The order stated:

> **D. Aimone Ranch**
>
> The Parties have stipulated to $875,000 as the value of the Aimone Ranch.  While the Parties agree to the overall value of the Aimone Ranch, there is a dispute as to whether the ranch should be divided into two parcels.  If the property were to be

---

[1] The parties, now divorced, share the same last name.  For ease of identification we use their first names.

1

divided, the stipulated value for the northern half is $485,000 and the stipulated value for the southern half is $390,000.

Craig Turner, a ranch and real estate appraiser with Western Agriculture Credit, testified that if the Aimone property were divided into 2 parcels—a north and a south parcel—he would appraise the northern parcel to be more valuable. The northern parcel has more development potential because its northern boundary is Wyoming Business Loop 80, the road between Urie and Lyman. The northern half of the ranch would be more valuable because it includes irrigated hay land worth $3,590 an acre and irrigated pasture worth $2,690 per acre. The southern half is made up of irrigated hay land worth $2,975 per acre but has the potential for a profitable gravel mining operation. The southeast corner of the entire property also has the buffalo handling facility. Turner appraised no additional value for the buffalo fence around the property or the handling facility because he considered those improvements to be an over-build for the typical buyer.

The Aimone property shall be divided between the Parties. [Ronda] shall receive the northern half, valued at $485,000. The northern half offers irrigated land, pasture land, and potential for commercial development for [Ronda]. [Rex] shall receive the southern half, valued at $390,000. The southern half offers the irrigated land, the buffalo handling facility, and the prospective gravel pit for [Rex].

The court did not specify a dividing line, and the appraised tracts had not been surveyed. Neither party appealed the division or parcel valuations.

[¶5]  By 2018, each party had a buffalo herd on his/her respective parcel. In October 2018 Rex proposed they build a fence between the north and south parcels to keep their herds separate, and Ronda agreed. Rex then ordered materials and built the fence before they agreed on the location of the property line, pricing for the fence, or apportionment of the cost. When Rex invoiced Ronda for the fencing costs, Ronda refused to pay.

[¶6]  In July 2019, Rex filed a motion to enforce the 2017 order and asked the court to order Ronda to accept a quitclaim deed to the northern parcel as fenced, accept an easement to access an irrigation headgate located south of the fence, and reimburse him $43,003.63 for half the fencing costs.

[¶7]  The court held a hearing in June 2020 where both parties requested clarification regarding the property line, and Ronda asked the court to deny Rex's other claims. The

court heard testimony from several witnesses and received exhibits describing the Aimone Ranch division and the location of Rex's fence.

[¶8]   Of particular significance, Mr. Turner testified that he had not been provided a survey of the property, and the division proposed in his appraisal in 2017 was based on acreage estimates derived from looking at county reports, aerial maps, and software data. He described the division as "[n]ot exact" and explained that though he assumed the dividing line he used for the appraisal was "pretty close" to the east west quarter section line, it was not actually on the quarter section line. It was in line with fences on either side of the Aimone Ranch and close to a ditch that ran through the property. He said he never intended to split the property into equal halves, and that he relied on the estimated acreages to determine each parcel's value.

[¶9]   Ronda called Eric Wall, a surveyor who prepared diagrams depicting three "interpretations of the [c]ourt's [2017 order]." Mr. Wall testified that the first diagram showed the property "as recently fenced," the second diagram showed an "equal acreage" division, and the third—"proportioned per appraisal"—showed the property divided into the respective acreages identified in the Turner Appraisal. He explained that if either the second or third diagram reflected the court's intended division, then Rex's fence was placed 10 feet or more north of the proper dividing line. He also said that the fence's current location "lines up pretty close" to the east west quarter section line. The court admitted Mr. Wall's diagrams as Exhibit 1 without objection.

[¶10] Aiming to clarify its 2017 order, the court ruled from the bench explaining it intended the division to be "proportioned pursuant to the appraisal of Mr. Turner[,]" and that the property should therefore "be divided according to the [third diagram on] Exhibit 1, proportioned per appraisal." The court then denied Rex's requests regarding the quitclaim deed and irrigation easement. It also denied Rex's fencing claims, concluding it could not properly address them because fencing was neither in evidence at the 2017 trial nor addressed in the 2017 order.

[¶11] Rex timely appealed the court's June 2020 rulings.

*DISCUSSION*

**I.      The court properly clarified its 2017 order.**

[¶12] W.R.C.P. 60(a) provides, in relevant part, that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." We have said "the central purpose of Rule 60(a) is to effectuate the contemporaneous intent of the court and to ensure that the judgment reflects that intent." *In re Kite Ranch, LLC v. Powell Family of Yakima, LLC*, 2008 WY 39, ¶ 18, 181 P.3d 920, 925 (Wyo. 2008) (quoting *Spomer v. Spomer*, 580 P.2d

3

1146, 1149 (Wyo. 1978)). The rule can "be utilized to dispel ambiguities that exist in the record," or to provide clarity when "the intention of the court is not evident or apparent[.]" *Tafoya v. Tafoya*, 2013 WY 121, ¶ 11, 309 P.3d 1236, 1239 (Wyo. 2013) (quoting *Spomer*, 580 P.2d at 1149).

[¶13] We conduct a two-part review when considering a W.R.C.P. 60(a) ruling. *See Loran v. Loran*, 2015 WY 24, ¶ 27, 343 P.3d 400, 406 (Wyo. 2015) (citing *Tafoya*, ¶ 7, 309 P.3d at 1238). The first question we must answer is whether the correction or clarification relates to one of the mistakes covered by W.R.C.P. 60(a).[2] *See id.* (citing *Tafoya*, ¶ 7, 309 P.3d at 1238); *see also* W.R.C.P. 60(a). "If so, we then review the district court's order to ascertain whether it clarified or modified the original judgment." *Loran*, ¶ 27, 343 P.3d at 406 (quoting *Tafoya*, ¶ 7, 309 P.3d at 1238). Both are questions of law we review de novo. *Id.* (citing *Tafoya*, ¶ 7, 309 P.3d at 1238).

[¶14] The "mistake" here arises from oversight or omission. *See* W.R.C.P. 60(a). The record makes clear the court did not establish or locate a property line when it divided and distributed the north and south parcels to Ronda and Rex, respectively, in 2017. In 2020, the district court expressly acknowledged it had "no idea" its 2017 findings and conclusions would result in the parties' confusion about the location of the dividing line between the parcels. The court's 2020 ruling addressed that confusion, or perceived omission, and therefore related to a mistake covered by W.R.C.P. 60(a).

[¶15] We proceed, then, to determine whether the court clarified, or modified, its 2017 order. *See Loran*, ¶ 27, 343 P.3d at 406. Rex argues the court modified its 2017 order when it divided the property pursuant to Mr. Wall's "proportioned per appraisal" diagram on Exhibit 1. We disagree.

[¶16] Our analysis "is informed and guided by the central purpose of Rule 60(a) which 'is to effectuate the contemporaneous intent of the court and to ensure that the judgment reflects that intent.'" *Tafoya*, ¶ 14, 309 P.3d at 1240 (quoting *Glover v. Crayk*, 2005 WY 143, ¶ 10, 122 P.3d 955, 958 (Wyo. 2005)). W.R.C.P. 60(a) can only "be used to make the judgment or record speak the truth" and not "to make it say something other than what originally was pronounced." *See* 11 Charles A. Wright et al., *Fed. Prac. & Proc. Civ.* § 2854 (3d ed. April 2020).[3] Therefore any clarification that "results in a 'substantive

---

[2] W.R.C.P. 60(a) was amended in 2017 to expressly include both clerical mistakes *and* mistakes arising from oversight or omission. *See* W.R.C.P. 60(a); *Matter of Est. of Meeker*, 2017 WY 75, ¶ 9 n.2, 397 P.3d 183, 187 n.2 (Wyo. 2017) ("Effective March 1, 2017, the Wyoming Rules of Civil Procedure were repealed and replaced in their entirety."). We have broadened the first question as posed in *Loran* and *Tafoya*— "whether the correction or clarification of a judgment relates to a clerical mistake"—accordingly.

[3] Because the federal rule is identical to the Wyoming rule it is appropriate to look to federal authorities for guidance. *Compare* F.R.C.P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."), *with* W.R.C.P. 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission

4

alteration' of the order" violates the purpose of the rule. *Brown v. Jerding*, 2020 WY 123, ¶ 17 n.6, 472 P.3d 1038, 1043 n.6 (Wyo. 2020) (quoting *Tafoya*, ¶ 21, 309 P.3d at 1241).

[¶17]   The court did not substantively alter its 2017 order when it found the third diagram on Exhibit 1 accurately reflected the division it intended in 2017.  The court's intent in 2017 was clear when it divided the property between Ronda and Rex based on the appraised values of the north and south parcels.  The appraisal stated that the Aimone Ranch property consisted of 306.22(+/-) acres and had a stipulated value of $875,000.  It then identified two tracts: a north tract with an estimated 154.11 acres valued at $485,000, and a south tract with approximately 152.11 acres valued at $390,000.  Mr. Turner testified at the 2020 hearing that he valued the tracts based on those respective acreages.

[¶18]   Exhibit 1's "proportioned per appraisal" diagram was the only diagram that closely reflected the appraisal's approximate acreages.  It divided the property into a north tract containing 154.309 acres and a south tract containing 152.305 acres.[4]  The other two diagrams reduced Ronda's tract by an acre or more, with the "as recently fenced" diagram reflecting a south tract that was larger than the north tract.[5]

[¶19]   Mr. Wall testified that he surveyed the property at Ronda's behest, and created diagram three to reflect the apportionment called for in the Turner Appraisal.  Rex did not object to Exhibit 1 at the hearing.  He did not challenge Mr. Wall on cross-examination as to whether diagram three accurately reflected the appraised acreages.  Nor did he call Mr. Turner back to rebut the diagrams.  Rex instead focused on the location of his fence in relation to the east west quarter section line.  He argues on appeal, relying on Mr. Turner's affidavit and isolated portions of Mr. Turner's 2020 testimony, that the quarter section line was the intended dividing line for the appraisal apportionment, and that he built the fence pursuant to that line.

[¶20]   Mr. Turner's 2020 testimony made clear that he assumed the dividing line he used for the appraisal was "pretty close" to the east west quarter section line, but he did not rely on a survey.  He acknowledged that the line he used to divide the parcels was not on the quarter section line, but rather in line with two fences located on either side of the Aimone Ranch and close to a ditch that ran through the property.  Relying on that dividing line, he

---

whenever one is found in a judgment, order, or other part of the record."); *see, e.g.*, *SWC Prod., Inc. v. Wold Energy Partners, LLC*, 2019 WY 95, ¶ 10 n.5, 448 P.3d 856, 860 n.5 (Wyo. 2019).

[4] Mr. Wall relied on a survey to determine the acreages in Exhibit 1.  Mr. Turner testified that he estimated the parcels' respective acreages based on aerial maps and county reports.  This would appear to explain the slight discrepancy between the acreage calculations in the appraisal and the "proportioned per appraisal" diagram.

[5] The "as recently fenced" diagram reflected a division where the north tract was 152.687 acres and the south tract was 153.927 acres.  The "equal acreage" diagram split the property in half, with both tracts containing 153.307 acres.  Mr. Turner and the court each stated they never intended to divide the property into equal acreages.

consulted aerial maps to estimate that the north parcel contained 154.11 acres and the south parcel contained 152.11 acres. He used those estimated acreages to determine the value of each parcel. Similarly, Mr. Turner stated in his affidavit that he "assume[d] a division of the north and south parcels using the east west 1/4 section line as the dividing line." But again, he admitted that the acreages he used for the north and south parcel were based on estimates, not a survey.

[¶21]   Neither the appraisal, Mr. Turner's 2017 trial testimony, nor the court's 2017 order mentioned any intent to divide the property along the quarter section line. Instead, each referenced a division based on the appraised values of the north and south parcels—values Mr. Turner testified were derived from the parcels' respective acreages. Accordingly, when the court found the "proportioned per appraisal" diagram reflected its contemporaneous intent, it did not substantively alter its 2017 order. It clarified that order.[6]

[¶22]   The court properly clarified its 2017 order to divide the property based on the appraised acreage values of the north and south parcels. Rex did not locate the fence in accordance with the intended division of acreage, and the court therefore rightfully denied the relief he requested relative to his proposed quitclaim deed and irrigation easement.

## II.   The district court properly refused to address fencing obligations at the 2020 hearing.

[¶23]   In his argument regarding reimbursement of the fencing costs, Rex first asserts the court should have clarified its 2017 order to require the parties to build a fence and split the cost. He claims the 2017 order's silence on fencing was an omission the court could clarify under W.R.C.P. 60(a). We conclude fencing obligations were not mistakenly omitted from the 2017 order as they were never raised in the divorce proceedings.

[¶24]   W.R.C.P. 60(a) gives courts "power to correct errors . . . so as to make [the record] speak the truth by actually reflecting that which was in fact done." *Kite Ranch*, ¶ 18, 181 P.3d at 925 (quoting *Blankenship v. Royalty Holding Co.*, 202 F.2d 77, 79 (10th Cir. 1953)). But the court may not use W.R.C.P. 60(a) to "render[] a judgment it did not intend to render[.]" *Id.* (quoting *Blankenship*, 202 F.2d at 79). The district court found that the parties did not raise the issue of fencing in 2017. The court therefore never considered whether fencing was necessary to divide the Aimone Ranch, or who should build and pay for a fence.[7] Rex cites no record support to the contrary. Thus, the 2017 order reflected

---

[6] Rex also contends the court's 2020 ruling dividing the property pursuant to the "proportioned per appraisal" diagram amounts to a modification of its 2017 order because it gave Ronda a "fractional interest" in the water rights of the south parcel. Rex fails to demonstrate and we find nothing in the record to show that water rights were a significant factor in the intended division apart from their consideration in the appraised value of each parcel—and Rex provides no specific explanation of how the water rights listed in the appraisal were changed by the court's 2020 ruling.

[7] The court stated at the 2020 hearing:

6

that which was in fact done, and the court correctly refused to render a fencing judgment it never intended to make.

[¶25]  Alternatively, Rex contends his 2019 fencing claims "sounded in unjust enrichment and quantum meruit" and the district court should have amended his pleadings under W.R.C.P. 15(b)(2)[8] to include those claims.  Rex did not present this argument to the district court, and he never requested that the court amend his pleadings.  Instead, Rex's 2019 motion sought only to enforce the court's 2017 order.  The divorce pleadings therefore were not at issue in these proceedings, and our review is limited accordingly.

[¶26]  Affirmed.

---

> I don't see anywhere that I ordered a fence had to be built, and I didn't see that I ordered that it had to be built within a certain period of time.  And I consent that all of this has to do with a fence, but I don't know what relevance that has to do with anything in my decree that I entered.

And:

> The Court clearly finds that I did not order any fence to be constructed.  I did not order the parties to pay half of that.  I heard no testimony in the trial that that's what I needed to do.  And I did not consider that.  And I find that if I were to do that at this point in time, I think I would be doing something that the law does not allow[.]

[8] "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings.  A party may move—at any time, even after judgment— to amend the pleadings to conform them to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of that issue."  W.R.C.P. 15(b)(2).